# UNITED STATES COURT OF INTERNATIONAL TRADE

***Before*: The Honorable Timothy C. Stanceu, Senior Judge**

| | |
|---|---|
| **China Manufacturers Alliance, LLC and Double Coin Holdings Ltd.,** )<br>)<br>) | |
| )<br>***Plaintiffs*** )<br>) | **Consol. Court No. 15-00124** |
| **v.** )<br>) | |
| **United States,** )<br>) | |
| ***Defendant.*** )<br>) | |

### REPLY BRIEF OF PLAINTIFFS
### CHINA MANUFACTURERS ALLIANCE, LLC AND
### DOUBLE COIN HOLDINGS, LTD.

Daniel L. Porter
James P. Durling
James C. Beaty
Katherine Afzal

**Curtis Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 452-7373

**February 25, 2022**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT.........................................................1

ARGUMENT...................................................................................................................4

I.     CONTRARY TO DEFENDANT'S CLAIM, THIS COURT HAS THE
AUTHORITY TO ADDRESS PLAINTIFF'S ARGUMENTS ABOUT
LACK OF SUBSTANTIAL EVIDENCE FOR COMMERCE'S
SEPARATE RATE CONCLUSION................................................................4

II.    COMMERCE'S ANALYSIS IS NOT SUFFICIENT FOR THIS COURT
TO CONCLUDE THAT THE UNDERLYING DETERMINATION WAS
SUPPORTED BY SUBSTANTIAL EVIDENCE ......................................................12

     A.    Defendant Fails to Demonstrate that Commerce's Conclusions Regarding
Potential Government Control Exerted Through SASAC Was Supported By
Substantial Evidence ...........................................................................................13

     B.    Defendant Fails to Show How Commerce's Rump Separate Rate Analysis
Comports with the Agency's Obligation to Examine the Whole Record and
its Own Stated Legal Test for Separate Rate Eligibility ...................................15

CONCLUSION .....................................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Advanced Tech. & Materials Co. v. United States*,
  938 F. Supp. 2d 1342 (Ct. Int'l Trade 2013) ........................................................ 17, 19

*Amado v. Microsoft Corp.*,
  517 F.3d 1353 (Fed. Cir. 2008) ......................................................................... 6

*Bannum, Inc. v. United States*,
  779 F.3d 1376 (Fed. Cir. 2015) ........................................................................ 10

*Burlington Truck Lines, Inc. v. United States*,
  371 U.S. 156 (1962) ........................................................................................ 17

*China Mfrs. All., LLC v. United States*,
  205 F. Supp. 3d 1325 (Ct. Int'l Trade 2017) .............................................. 5, 8

*China Mfrs. Alliance, LLC v. United States*,
  1 F.4th 1028 (Fed. Cir. 2021) ........................................................................ 7, 9

*Engel Indus., Inc. v. Lockformer Co.*,
  166 F.3d 1379 (Fed. Cir. 1999) ...................................................................... 6, 9

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
  137 F.3d 1475  (Fed. Cir. 1998) ...................................................................... 11

*Finch v. Hughes Aircraft Co.*,
  926 F.2d 1574 (Fed. Cir. 1991) ........................................................................ 6

*Gilda Indus. v. United States*,
  300 F. App'x 912 (Fed. Cir. 2008) .................................................................... 7

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
  527 F.3d 1318 (Fed. Cir. 2008) ........................................................................ 6

*Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd. et al. v. United States*,
  Consol. Court No. 19-00031, Slip Op. 22-6 (January 24, 2022) ................. 3, 12, 14, 20

*In re Sanford Fork & Tool Co.*,
  160 U.S. 247 (1895) ........................................................................................ 6

*Laitram Corp. v. NEC Corp.*,
  115 F.3d 947 (Fed. Cir. 1997) .......................................................................... 6

*Nucor Corp. v. United States*,
  414 F.3d 1331 (Fed. Cir. 2005) ........................................................................ 17

*Singleton v. Wulff*,
   428 U.S. 106 (1976) ........................................................................... 6

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) ........................................................................... 6

*Tronzo v. Biomet, Inc.*,
   236 F.3d 1342 (Fed. Cir. 2001) ....................................................... 10

*U.S. Steel Corp. v. United States*,
    637 F. Supp. 2d 1199 (Ct. Int'l Trade 2009) ................................. 17

*United States v. Husband*,
   312 F.3d 247 (7th Cir. 2002) ........................................................... 11

**Administrative Decisions**

*Final Determination of Sales at Less Than Fair Value and Final Partial Affirmative
   Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from
   the People's Republic of China*,
   71 Fed. Reg. 29,303 (May 22, 2006) ............................................... 18

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant's Brief opens with a deeply flawed argument that this Court does not have the authority to consider Plaintiffs' claims that Commerce's conclusion that Double Coin did not satisfy separate rate eligibility is not supported by substantial evidence. This argument must be rejected as it is based on both an incorrect understanding of this Court's prior decisions and a flawed understanding of applicable law.

Specifically, Defendant's argument conflates very distinct claims presented by Plaintiffs.   In their original appeal Plaintiffs China Manufacturers Alliance LLC ("CMA") and Double Coin Holdings Ltd. made two types of claims challenging Commerce's determination: (a) legal claims that Commerce did not have statutory authority and (b) factual evidentiary claims that Commerce's conclusion was not supported by substantial evidence.  There is no question that this Court's prior decision addressed only Plaintiffs legal claims and did not address Plaintiffs lack of substantial evidence claims.  Indeed, this Court explicitly affirmed this point in its decision.

Given this fact, Defendant's asserted legal support for its argument fails. Defendant's argument that this Court does not have the authority to consider Plaintiffs' claims is based primarily on Defendant's <u>assumption</u> that Plaintiffs could have appealed to the Federal Circuit those issues <u>not</u> addressed by this Court.  But there is no legitimate basis for this assumption.  And indeed, both of the two cases cited for this proposition involved appellate review of a decision that had actually been made by the trial court. Contrary to Defendant's argument, parties cannot appeal those issues not addressed by

the trial court.  Moreover, Defendant's argument ignores the fact that the Federal Circuit explicitly remanded the case to this Court for further proceedings, rather than issuing a mandate without remand.  Such fact demonstrates that the Federal Circuit was well aware that there still existed claims that this Court needed to address.

Defendant's arguments to justify Commerce's conclusion that Double Coin did not satisfy separate rate eligibility also fail.  Defendant does not show how Commerce's analysis of this record utilized anything other than a rote application of an irrebuttable presumption of government control in cases of majority ownership by a SASAC supervised entity in the corporate tree of a respondent.  Indeed, this Court has already observed that in this case Defendant's counsel effectively conceded that Commerce did not properly analyze all four factors of the four factor test that Commerce maintains applies.

Moreover, Defendant's brief fails to rebut Plaintiffs' argument that Commerce did not properly examine whether Double Coin's export prices were set without government influence on the basis of the existence of a U.S. sales affiliate that negotiates all export prices. This U.S. affiliate negotiating export prices breaks the link between SASAC control and export activities.  This is a critical element of the analysis, as CMA's activities satisfy the first two criteria of Commerce's test and undermines Commerce's position that a relationship to SASAC must necessarily result in a denial of separate rate eligibility.  Defendant's brief simply claims that Commerce was allowed to ignore Plaintiffs' discussion of specific evidence by reference to another, separate, Commerce

2

case with different parties and different factual circumstances.  Such approach does not satisfy the substantial evidence standard.

Finally, we reference this Court's very recent decision in *Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd. et al. v. United States*, Consol. Court No. 19-00031, Slip Op. 22-6 at 36 (January 24, 2022).  This decision involved a challenge to Commerce's conclusion about the lack of separate rate eligibility for the exact same parties and virtually identical factual circumstances as in the instant case.  Accordingly, we respectfully submit that it is appropriate for this Court to render a similar ruling in the instant case; namely, that Commerce's underlying determination about Double Coin's separate rate eligibility is not supported by substantial evidence.

**ARGUMENT**

I.     **CONTRARY TO DEFENDANT'S CLAIM, THIS COURT HAS THE AUTHORITY TO ADDRESS PLAINTIFF'S ARGUMENTS ABOUT LACK OF SUBSTANTIAL EVIDENCE FOR COMMERCE'S SEPARATE RATE CONCLUSION**

Section II of Defendant's brief argues that, due to the decision rendered by the Court of Appeals for the Federal Circuit, this Court has no authority to consider Double Coin's claims that there was not substantial evidence supporting the Commerce conclusion that it was not eligible for a separate rate. This argument fails.

Defendant's argument conflates very distinct arguments presented by Plaintiffs. As the Court recalls, in their original appeal to this Court, Plaintiffs CMA and Double Coin made two types of arguments challenging Commerce's determination. First, Plaintiffs CMA and Double Coin made purely legal claims that Commerce's determination was not in accordance with law because Commerce was acting contrary to the statute. Plaintiff's Opening Brief at 8-27, ECF # 48. Second, Plaintiffs also made substantial evidence claims that Commerce's conclusion that Double Coin was controlled by the Chinese Government was not supported by substantial evidence. See Plaintiff's Opening Brief at 27-51, ECF # 48.

In its decisions this Court only addressed the legal arguments. This Court's decision did not address at all, and therefore did not render any conclusion concerning, Section III of Plaintiff's opening brief that argued the lack of substantial evidence in Commerce's conclusion of Chinese government control. This Court specifically stated, "{f}or the reasons discussed in this Opinion and Order, the court agrees with the fourth

4

argument {CMA and Double Coin} put forth. Therefore, <u>the court does not address the remaining arguments</u>." See *China Mfrs. All., LLC v. United States*, 205 F. Supp. 3d 1325, 1333 (Ct. Int'l Trade 2017) ("*CMA I*")(emphasis added). The fourth argument the court refers to being that "it was unlawful for Commerce to subject Double Coin to the 105.31% rate, rather than a rate determined based on Double Coin's own data." *Id.* Therefore, the issue of separate rate eligibility was not decided by this Court, was not raised on appeal to the Federal Circuit, and accordingly can now be litigated.  Contrary to Defendant's argument, Plaintiffs did not waive the issue of whether Commerce had substantial evidence for its conclusion that Double Coin was not eligible for a separate rate.

Defendant's argument that this Court does not have the authority to consider Plaintiffs' claims is based primarily on Defendant's <u>assumption</u> that Plaintiffs could have appealed to the Federal Circuit those issues not addressed by this Court.  But there is no legitimate basis for this assumption.  And indeed, neither of the two cases cited for this proposition, Defendant Brief at 12, actually address this issue.  Rather these two cases both involved appellate review of a decision that had actually been made by the trial court, and therefore these cases do not address the situation of when the trial court does not render any decision for certain claims.  That the Federal Circuit would apply the same standard of review does not address the issue of whether a party can appeal an issue not addressed by the lower court.

Contrary to Defendant's argument, parties cannot appeal those issues not addressed by the trial court.  Forcing parties to make contingent appeals of issues the trial

the court did not address, and forcing appellate courts to rule on claims in the first instance without the benefit of an initial review by the trial court, would make no sense at all.  That is why, as stated by the Federal Circuit, "{i}t is well-settled that, absent exceptional circumstances, a party cannot raise on appeal legal issues not raised <u>and considered</u> in the trial forum.  *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1576 (Fed. Cir. 1991)(emphasis added); *see also Golden Bridge Tech., Inc. v. Nokia, Inc*., 527 F.3d 1318, 1322 (Fed. Cir. 2008) ("{i}t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." (citing *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976)).

Defendant's argument also completely misunderstands the legal principles of the mandate rule and how it works.  The mandate rule "provides that 'issues actually decided {on appeal}-- those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court -- are foreclosed from further consideration.'" *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).

The Supreme Court has clarified, however,  that, "while a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256, 40 L. Ed. 414, 16 S. Ct. 291 (1895)); see also *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) ("Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on matters left open by the mandate.").  For example, in *Gilda Indus. v. United States*, the

Federal Circuit held that because this Court relied on one exception and did not address the second exception in the first iteration of the case, which was appealed, the second exception was not an issue in the appeal before the Federal Circuit.  The Federal Circuit then stated, "{b}ecause the second carousel exception was not before us in Gilda II and our decision in that case did not implicate that exception, the mandate did not foreclose the trial court from addressing that exception on remand. *Gilda Indus. v. United States*, 300 F. App'x 912, 915 (Fed. Cir. 2008) (nonprecedential).

In this case, the Federal Circuit "reverse{d} the final judgment of the Trade Court and remand{ed} for further proceedings" without making a judgment on separate rate eligibility. *China Mfrs. Alliance, LLC v. United States*, 1 F.4th 1028, 1030 (Fed. Cir. 2021) (*CMA IV*).  The Federal Circuit remanded for "further proceedings" precisely because it correctly recognized there might well be pending issues for the trial court to address in the first instance.  In fact, the Federal Circuit specifically noted in footnote five that the appeal did not include or address the factual determination regarding *de facto* independence from Chinese government control.  *Id.* at 1032 n.5 ("Double Coin does not appeal Commerce's factual determination that Double Coin failed to demonstrate *de facto* independence from Chinese government control.")  This footnote demonstrates that the Federal Circuit understood that the issue of separate rate eligibility had not been addressed by the trial court, was not part of the appeal, and therefore was not included in the court's mandate.  The only reasonable interpretation of the footnote is that the issue was not before the Federal Circuit because there was no trial decision addressing the issue of separate rate eligibility.  Defendant seems to suggest this footnote means the

Federal Circuit somehow thought Plaintiffs could have appealed,  Defendant Brief at 12-13 (ECF No. 264), but this reading goes too far.  The footnote merely notes for clarity the point that since the issue had not been addressed by the trial court, it was not on appeal before the Federal Circuit.

Defendant argues at some length that this Court's decisions implicitly found Double Coin to be part of the China-wide entity, Defendant Brief at 14-15 (ECF No. 264), but this reading is simply incorrect. This Court made clear it was not addressing the distinct issue of Double Coin's separate rate eligibility.  For example, this Court stated that it  "agrees with the fourth argument {CMA and Double Coin } put forth. Therefore, the court does not address the remaining arguments." *CMA I*, at 1333.   Additionally, this Court prefaced its conclusion with the comment , "{w}hether or not it was lawful for Commerce to deem Double Coin to be part of what it deemed "the PRC-wide entity…" *Id.* at 1342.  This comment reinforces the point that this Court was not addressing the issue of whether Double Coin was lawfully deemed part of the PRC-wide entity because it did not affect the outcome of the decision and need not be addressed. Accordingly, that this Court proceeded to other legal issues does not mean the Court addressed, let alone decided, whether there was substantial evidence to support finding Double Coin to be part of the China-wide entity.

As the Defendant acknowledges in their response brief, Defendant Brief at 12 (ECF No. 264), the Federal Circuit's decision concluded only that the application of the 105.31 percent rate to Double Coin was reasonable if applied to a member of the China-wide entity, and did not discuss the separate rate eligibility issue initially raised by

Double Coin before this Court.  Accordingly, this issue can now be addressed by the trial court.  The issue is not precluded by the decision on appeal as it was not initially reached by this Court and may be addressed now.

Although this proposition seems simple enough, Defendant cites numerous cases to create the impression of authority for its position that the issue has been waived.  But these cases Defendant cites are inapposite to Defendant's position.   For the sake of completeness, we explain below why the cases referenced by Defendant's brief are inapposite.

Defendant cites *Engel Indus., Inc. v. Lockformer Co.*,  166 F.3d 1379 (Fed. Cir. 1999) as support for the misconception that Double Coin's argument is precluded from further adjudication.  However, the court in *Engel Indus.*, states that "{u}nless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus., Inc.*, 166 F.3d at 1383 (emphasis added).   Defendant quotes this very portion of the decision but conveniently ignores the first clause, "unless remanded by this court." Defendant Brief at 13 (ECF No. 264).  The court in *Engels* stresses in its decision that the issues were precluded from further adjudication specifically because it was decided without remand. As stated above, there is no question that in this case the Federal Circuit has remanded for further proceedings.  *CMA IV*, 1 F.4th at 1040.

Defendant also cites cases in which either the issue was decided by the trial court and then subsequently not raised on appeal or the issue was never raised by the party before the initial court and only raised for the first time after appeal on remand.

9

Defendant cites *Tronzo v. Biomet, Inc*., 236 F.3d 1342 (Fed. Cir. 2001), a case in which Biomet did not challenge an issue on appeal and therefore was determined to have waived the issue on remand.  In *Tronzo*, the court determined that because the district court in the first iteration of the case ruled on the issue of punitive damages and Biomet did not challenge the initial decision on appeal it could not do so on remand. *Tronzo*, 236 F.3d 1342 at 1349.  This decision again is not relevant because in this case the Court did not reach a decision on the issue of separate rate eligibility and therefore it was not an issue previously decided.  Indeed, the Defendant's own parenthetical stresses the key point that "once a contested issue is addressed by the trial court," then waiver can apply. But that key factual predicate – being addressed by the trial court – does not apply here.

Defendant's argument regarding the scope of a mandate makes the same mistakes. First, Defendant cites *Bannum, Inc. v. United States*, 779 F.3d 1376 (Fed. Cir. 2015), a case in which the plaintiff filed complaints on two grounds (defects in solicitations and defects in the evaluation process) *both* of which were ruled on by the Court of Federal Claims. *Id.* at 1378.  On appeal the plaintiff argued exclusively on its challenge to the defects in solicitation and made no mention of the evaluation process claim therefore did not preserve the issue.  *Id.* at 1381. The court determined that because the plaintiff focused entirely on the solicitation claim and did not respond to the government's waiver argument in its reply brief therefore the claim was properly deemed waived.  *Id.* at 1382. Again, this case only demonstrates that because the underlying court previously decided both issues and the plaintiff only addressed one on appeal the second issue was deemed waived.  As stated above, in the present case this Court did not address the substantial

evidence claim regarding separate rate eligibility in its decision and therefore the issue was not waived.

Similarly, Defendant cites *United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002), a case regarding an alleged improper search and seizure. On appeal the defendant argued only that the method used to execute the search warrant violated his Fourth Amendment right, but then on remand the defendant also raised additional challenges.  The court explained  "the parties did not raise, nor did we address, the issues of the Terry stop, the arrest, or the validity of the warrant. The defendant had waived these issues and thus they were not in the scope of our remand." *Id.* at 251.  Again, the defendant never raised the additional issues before the lower court whereas here, Plaintiffs clearly raised the issue of separate rate eligibility in Section III of the opening brief. *See* Plaintiff's Opening Brief at 27-51, ECF # 48.

The issue of separate rate eligibility was raised by Plaintiffs in the original case before this Court and was not addressed in that decision.  The Court only addressed the two legal arguments before it and those were the issues addressed on appeal before the Federal Circuit. As a general rule, "an appellate mandate governs only that which was actually decided" leaving the underlying court free to consider issues left unresolved. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1478 (Fed. Cir. 1998).  The issue of separate rate eligibility was not included in the appeal and therefore on remand this Court is now free to address the remaining issues of the case.

II.     **COMMERCE'S ANALYSIS IS NOT SUFFICIENT FOR THIS COURT TO CONCLUDE THAT THE UNDERLYING DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Commerce's separate rate analysis is designed to discern whether the government in the non-market economy at issue controls an entity's "export activities."  Final  IDM at 10 (P.R. 293) ("In antidumping proceedings involving NME countries, such as the PRC, the Department has a rebuttable presumption that the export activities of all firms within the country are subject to government control and influence.").  Defendant fails to show how Commerce's analysis of this record utilized anything other than a rote application of an irrebuttable presumption of government control where there is majority ownership by a SASAC supervised entity in the corporate tree of a respondent.  Further, Defendant fails to show how Commerce's flawed approach to SASAC's role in Double Coin's export activities meets the burden of performing the full four-factor separate rate test.  As a result of these flaws in its analysis, Commerce's determination that Double Coin is not eligible for a separate rate is unsupported by substantial evidence and must be remanded.

In this regard, we to reference this Court's very recent decision in *Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd. et al. v. United States*, Consol. Court No. 19-00031, Slip Op. 22-6 at 36 (January 24, 2022).  This decision involved a Commerce lack of separate rate eligibility conclusion for the exact same parties as in the instant case; namely, Double Coin and CMA.  Moreover, a simple comparison of the principal briefs filed by Double Coin and CMA in that case with the principal briefs filed by Double Coin and CMA in the instant case demonstrate that key underlying facts in both cases are virtually identical; namely, same corporate structure and same separate

U.S. affiliate controlling U.S. prices.  We respectfully submit such similarity in facts is important because this Court concluded in *Guizhou Trye* that Commerce's lack of separate rate eligibility conclusion for Double Coin could not be sustained.  We respectfully submit that the same ultimate conclusion applies here.

A.   **Defendant Fails to Demonstrate that Commerce's Conclusions Regarding Potential Government Control Exerted Through SASAC Was Supported By Substantial Evidence**

In their opening brief in this remand proceeding, Plaintiffs identified various gaps in Commerce's analysis of Double Coin's separate rate status with a specific focus on its analysis of the interaction of the PRC Company Law and the core conclusion that SASAC controlled the day-to-day activities of Double Coin.  Plaintiff's Br. at 27-39 (ECF No. 260).  Specifically, Plaintiffs argued that specific aspects of the PRC Company Law and Double Coin's own articles of association prevented the kind of influence upon which Commerce's conclusion rests and that Commerce had actually endorsed that conclusion in its own *de jure* control analysis.

Defendant states that Commerce's analysis of these facts was appropriate in the *de facto* context because "Huayi has nearly complete control over shareholder decisions, including decisions which may affect the management and operation of the company." Def. Br. at 19.  In the context of the *de jure* analysis, however, Defendant acknowledges that "the *de jure* factors are not overridingly indicative of the absence of control of export activities in the typical case, but rather they demonstrate an ability on the part of the exporter to control its own commercial decision making."  Def. Br. at 22 (italics in

original).  This attempt to draw a distinction between export activities and commercial decision making is unavailing.  The two are inextricably linked.

Commerce's actual analysis of the underlying evidence in the context of its *de facto* analysis is also flawed.  While Defendant accepts the premise that the corporate controls presented by Double Coin might show *de facto* independence, it nonetheless reiterates Commerce's position that in the absence of a specific instance of those controls being exercised those facts are meaningless and its presumption of control is not rebutted.  Def. Br. at 28.  As stated in Plaintiffs' initial brief, however, a presumption is rebutted when contrary evidence is offered.  Plaintiffs' Br. at 23-24.  Here, Plaintiffs have offered evidence that the PRC Company Law and Double Coin's internal controls prevent government influence on day-to-day operations.

Defendant counters that despite affirmative factual evidence that Commerce's conclusion is wrong, the presumption nonetheless governs.  Def. Br. at 28.  Implicit in that conclusion, however, is an affirmative finding by Commerce, without evidence, that company officials at Huayi and Double Coin have and will violate the law and exert the type of influence that is barred by the PRC Company Law.  This conclusion is without any basis in the record and inconsistent with this Court's prior rulings regarding Commerce's obligations in the context of substantial evidence analysis of separate rate eligibility.  *See Guizhou Tyre v. United States,* Slip Op. 22-6 at 38.   As a result, the determination to deny Double Coin a separate rate on the sole basis of SASAC's potential to control Double Coin is not supported by substantial evidence and must be remanded.

**B.      Defendant Fails to Show How Commerce's Rump Separate Rate Analysis Comports with the Agency's Obligation to Examine the Whole Record and its Own Stated Legal Test for Separate Rate Eligibility**

In the administrative determination Commerce failed to consider important aspects of the factual record, placing its emphasis entirely on SASAC's potential ability to control Double Coin through Huayi.  Defendant asserts that Commerce's decision is lawful because it "considered the totality of the record and determined that the evidence cited by Double Coin was insufficient to establish that the company operates free of *de facto* government control."  Def. Br. at 17 (ECF No. 264) (italics in original).  Later in the same section of the brief, however, Defendant asserts that Commerce does not need to analyze the whole record as long as it reaches a negative conclusion on one of the four factors of the *de facto* control test.  Def. Br. at 20 ("Commerce may deny a request for a separate rate if an applicant fails to demonstrate separation from the government with respect to any one of the *de jure* or *de facto* criteria.").  These two statements about what evidence Commerce examined and what analysis it performed are inconsistent, making Commerce's ultimate conclusion unreasonable.

And indeed, during oral argument this Court explicitly recognized that counsel for Defendant had effectively conceded that Commerce, in fact, had not examined the totality of the record and had limited its analysis to Huayi's relationship with SASAC:

> THE COURT: How can I possibly sustain reasoning where they say they applied a four-factor test and they don't tell me what the four factors even were as opposed to what their decisions were thereunder?  How can I do that?"

15

Transcript of Oral Argument at 182-191, *China Manufacturers Alliance, LLC et al., v. United States*, Consol. Court No. 15-00124 (2016) (ECF No. 259).

Rather than attempt to argue that Commerce actually performed the required analysis, Defendant's position relies entirely on Commerce's limited examination of the ability of SASAC to influence the selection of members of the board of Double Coin and thus by extension the members of the day-to-day management team. Defendant cannot rehabilitate Commerce's flawed analysis on these narrow grounds. Commerce announced a test for separate rate eligibility, stated it was using that test in this administrative review, but then failed to meet that standard in its determination.

In the final results memorandum in this case Commerce's analysis concludes that "{w}hether or not the Huayi Group, which is the majority owner of Double Coin, demonstrably exercised control over Double Coin's day-to-day operations does not refute the fact that a government-owned entity has near complete control of shareholder decisions of Double Coin." Final IDM at 16 (P.R. 293). The memorandum also includes a reference to the fact that CMA, Double Coin's U.S. sales affiliate, sets all U.S. pricing but Commerce declines to examine any of the underlying evidence. Instead, the memorandum dismisses this element of the record stating "{w}e note that the respondent in the *Diamond Sawblades* litigation made similar arguments in that proceeding." Final IDM at 16 (P.R. 293). Plaintiffs respectfully submit that a reference to a completely separate case with different parties and different factual circumstances cannot possibly constitute proper examination of the totality of the evidentiary record in the instant case.

Moreover, to the extent Commerce was attempting to rely on the analysis performed in the referenced cases covering diamond sawblades, that analysis is absent from the record here. "Each agency determination is *sui generis* involving a unique combination and interaction of many variables, and therefore a prior administrative determination is not legally binding on other reviews before this court." *U.S. Steel Corp. v. United States*, 637 F. Supp. 2d 1199, 1218 (Ct. Int'l Trade 2009) (citing *Nucor Corp. v. United States*, 414 F.3d 1331, 1340 (Fed. Cir. 2005)). Commerce itself notes that its own interpretations of law may change and that "the statute does not afford respondents any expectation that a finding from a prior segment will be upheld in a subsequent segment." Final IDM at 18 (P.R. 293).

In each segment, Commerce must identify the facts from the record of the individual proceeding that it is relying on in making its determinations. The focus of judicial review is what agency did or did not do and not what the Department of Justice later identifies as supporting Commerce's determination. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962). Fundamentally, Commerce's underlying determination here is devoid of any true factual analysis beyond the corporate ownership of Huayi. As a result, there is really nothing for this Court to analyze concerning all four factors.

In an effort to skirt this problem, Defendant relies heavily on the *Advanced Tech* cases that resulted in Commerce's policy shift to suggest that the gap in Commerce's analysis is lawful. Def. Br. at 18-20, 22-26. Defendant's characterization of the holding in those cases is, however, inaccurate. Defendant asserts that the *Advanced Tech* cases

17

stand for the proposition that Commerce may examine only two of the four criteria in its separate rate test.  Def. Br. at 20.  The focus of those cases, however, was not whether Commerce had reviewed only two criteria and omitted any analysis of two of them. Rather,  the focus was whether Commerce's conclusion regarding the two disputed elements was supported by substantial evidence.  Indeed, in the underlying administrative decision in *Advanced Tech* Commerce, in fact, did analyze all four factors making a separate finding on each one.  *Preliminary Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Preliminary Partial Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the People's Republic of China*, 70 Fed. Reg. 77,121, 77,128 (Dec. 29, 2005) (unchanged in final determination *Final Determination of Sales at Less Than Fair Value and Final Partial Affirmative Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 Fed. Reg. 29,303 (May 22, 2006)). Specifically, Commerce found as follows:

| Criteria | Evidence |
| --- | --- |
| whether the export prices are set by or are subject to the approval of a governmental agency | "emails between its general manager and unaffiliated U.S. customers regarding price negotiation on U.S. sales, and documents demonstrating independent negotiation of contracts for purchases of raw materials" |
| whether the respondent has authority to negotiate and sign contracts and other agreements | |
| whether the respondent has autonomy from the government in making decisions regarding the selection of management | "documentation that both BGY and AT&M select their own management and boards of directors, demonstrating that BGY and AT&M have autonomy over the selection of management" |
| whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses | "financial statements and board resolution minutes regarding the distribution of profit by both BGY and AT&M" |

Though Commerce's determination was ultimately overturned on the basis of a change in analysis of two of the factors, the *Advanced Tech* cases do not stand for the proposition that Commerce does not have to perform the test or consider each of the factors. *Advanced Tech. & Materials Co. v. United States*, 938 F. Supp. 2d 1342, 1350 (Ct. Int'l Trade 2013) (quoting Commerce as stating that it was "not replacing its prior practice but was altering its analysis under protest given this Court's prior remand orders.").

In addition, Commerce cites *Yantai CMC Bearing Co.* for limitations on Commerce's obligation to perform the entire *de facto* control test. *See* Def. Br. at 11. In this regard, we note that this Court has ruled that Commerce must in fact perform the whole test to ensure that its determinations are consistent with the record and the purpose of the test. As this Court stated in its recent decision in *Guizhou Tyre*, when Commerce

states that its separate rate analysis is focused on whether the government can influence the "export activities" of a respondent it must then "explain whether its finding of government control extended, specifically, to GTCIE's export activities during the period of investigation." *Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd. et al. v. United States*, Consol. Court No. 19-00031, Slip Op. 22-6 at 36 (January 24, 2022). The analytical paradigm presented in that case mirrors the one that Commerce utilized in the instant case. Commerce found that there was a SASAC owned entity in the respondent's corporate tree and denied the respondent a separate rate without performing the stated analysis.

Critically, here, Commerce failed to examine whether Double Coin's export prices were set without government influence on the basis of the existence of a U.S. sales affiliate that negotiates all export prices, and thus did not consider whether the link between SASAC control and export activities had been broken. This is a critical element of the analysis as CMA's activities satisfy the first two criteria of Commerce's test and serves to undermine Commerce's position that a relationship to SASAC must necessarily result in a denial of separate rate eligibility. Since Commerce did not examine these issues neither Plaintiffs, nor the Court, know how Commerce evaluated these aspects of the record. As a result, this element of Commerce's conclusion is not supported by substantial evidence and must be remanded to Commerce for further proceedings to reveal how SASAC ownership operates in this specific factual environment. Such a bright line would fall afoul of Commerce's position that the presumption of government control remains rebuttable.

20

**CONCLUSION**

For all of the foregoing reasons, Double Coin and CMA respectfully request that the Court hold unlawful the final antidumping determination that Commerce rendered in the underlying administrative review and remand with instructions for Commerce to reissue its AD determination consistent with the court's decision.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
James C. Beaty
Katherine Afzal

*Counsel for China Manufacturers Alliance LLC
and Double Coin Holdings, Ltd.*

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Court's Order of September 23, 2015.  Specifically, excluding those exempted portions of the brief as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 5,402 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Daniel L. Porter

Daniel L. Porter

Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006

*Counsel for Plaintiffs China Manufacturers Alliance LLC and Double Coin Holdings Ltd.*