Slip Op. 23-75

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHINA MANUFACTURERS ALLIANCE, LLC and DOUBLE COIN HOLDINGS LTD., et al., | |
| Plaintiffs, | Before: Timothy C. Stanceu, Judge |
| v. | Consol. Court No. 15-00124 |
| UNITED STATES, | |
| Defendant. | |

## OPINION AND ORDER

[Effectuating the mandate of the Court of Appeals for the Federal Circuit and adjudicating the remaining claim in this litigation, in which parties contested an agency determination concluding an administrative review of an antidumping duty order on off-the-road tires from the People's Republic of China]

Dated: May 16, 2023

*Daniel L. Porter*, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., for plaintiffs China Manufacturers Alliance, LLC and Double Coin Holdings Ltd. With him on the briefs were *James P. Durling, Matthew P. McCullough*, and *Tung A. Nguyen.*

*Ned H. Marshak*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., for plaintiffs Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd. With him on the briefs were *Brandon M. Petelin, Dharmendra N. Choudhary, Andrew T. Schutz*, and *Jordan C. Kahn.*

*John J. Todor*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of counsel was *Paul K.*

*Keith*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Stanceu, Judge: In this consolidated case, plaintiffs contested a final determination the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued upon the conclusion of the fifth periodic administrative review ("Fifth Review") of an antidumping duty order on certain off-the-road pneumatic tires (the "subject merchandise") from the People's Republic of China ("China" or the "PRC").

This Opinion and Order is issued to effectuate the mandate of the Court of Appeals for the Federal Circuit ("Court of Appeals"), CAFC Mandate in Appeal # 20-1159 (Aug. 2, 2021), ECF No. 253, in *China Mfrs. Alliance, LLC v. United States*, 1 F.4th 1028 (Fed. Cir. 2021) ("*CMA IV*") and to adjudicate the sole claim that remains at issue in this litigation.

## I. BACKGROUND

Background on this case is presented in the prior opinions of this Court and the Court of Appeals and is supplemented herein. *See CMA IV*, 1 F.4th at 1030–35; *China Mfrs. Alliance, LLC v. United States*, No. 19-115, 2019 WL 4165274, at *1–3 (Ct. Int'l Trade Sept. 3, 2019) ("*CMA III*"); *China Mfrs. Alliance, LLC v. United States*, 43 CIT __, __, 357 F. Supp. 3d 1364, 1365–68 (2019) ("*CMA II*"); *China Mfrs. Alliance, LLC v. United States*, 41 CIT __, __, 205 F. Supp. 3d 1325, 1329–32 (2017) ("*CMA I*").

The administrative determination contested in this case, referred to herein as the "Final Results," appeared in two Federal Register publications. *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 Fed. Reg. 26,230 (Int'l Trade Admin. May 7, 2015) (correcting a ministerial error in an earlier published decision, *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 Fed. Reg. 20,197 (Int'l Trade Admin. Apr. 15, 2015)).

The plaintiffs in this case are China Manufacturers Alliance LLC and Double Coin Holdings Ltd. (collectively, "Double Coin"), and Guizhou Tyre Co., Ltd. and Guizhou Tyre Export and Import Co., Ltd. (collectively, "GTC"). Double Coin and GTC were the exporters/producers that Commerce selected as the mandatory respondents in the Fifth Review. Defendant is the United States.

## II. DISCUSSION

All issues pertaining to the claims brought by GTC in this litigation have been resolved. As to Double Coin, the court first must interpret the scope of the mandate of the Court of Appeals in *CMA IV*, on which Double Coin and defendant United States disagree, as shown by submissions they made to the court following the issuance of that mandate. The court then must decide what issues, if any, remain to be litigated as to the claims of Double Coin.

### A.  Double Coin's Claim Concerning Control by the Government of the PRC Has Not Been Adjudicated

Double Coin argues that remaining to be adjudicated is its claim that Commerce erred in finding that Double Coin failed to rebut the Department's presumption that Double Coin is controlled by the government of the PRC.  Joint Status Report and Proposed Briefing Schedule 1–3 (Sept. 17, 2021), ECF No. 255.  Disagreeing, defendant argues that this claim already has been adjudicated in its favor.

According to defendant, the Court of Appeals held in *CMA IV* that "Commerce's application of the 105.31% PRC-wide entity rate to Double Coin was not contrary to law and was reasonable on the facts of this case."  *Id*. at 4 (quoting *CMA IV*, 1 F.4th at 1040).  Defendant interprets this statement in the *CMA IV* opinion to mean that the Court of Appeals has adjudicated the claim at issue on the merits and that Commerce, on remand, must assign Double Coin the 105.31% rate Commerce determined for the PRC-wide entity in the Final Results, which rate the Court of Appeals, reversing this Court's decision and judgment in *CMA III*, ruled was according to law as applied to that entity.  If defendant is correct, no issues remain to be decided in this litigation.  If Double Coin is correct, then the court now must adjudicate its claim contesting the Department's determination that Double Coin failed to rebut the presumption of control by the PRC government and the Department's resulting decision to include Double Coin within the PRC-wide entity.  Were Double Coin to prevail on that claim, Commerce would be required on remand to assign to Double Coin the rate Commerce calculated for Double

Coin in the Final Results, which was a *de minimis* rate of 0.14%.  *Issues and Decision*

*Memorandum for Final Results of Antidumping Duty Administrative Review: Certain New*

*Pneumatic Off-the-Road Tires from the People's Republic of China; 2012-2013* at 12 (Int'l

Trade Admin. Apr. 8, 2015), P.R. 293 ("*Final I&D Mem.*").[1]

    The court concludes that Double Coin is correct as to the interpretation of the

mandate of the Court of Appeals.  *CMA IV* held that it is permissible for Commerce to

determine a "country-wide NME [nonmarket economy] entity rate" and to "assign such

a rate to the unitary group of exporters in an NME country that have failed to rebut the

presumption of government control."  *CMA IV*, 1 F. 4th at 1039.  Commerce determined

that Double Coin failed to rebut the presumption and thus was among the unitary

group of exporters, but that determination, which Double Coin contested in one of the

claims it asserted in this action, has not been adjudicated by this Court.  As defendant

acknowledges, this Court "did not make any findings in *CMA I* regarding Double

Coin's substantial evidence challenge to Commerce's conclusion that Double Coin

failed to rebut the presumption of *de facto* Chinese government control."  Def.'s Resp. to

Pls.' Mot. for J. on the Admin. R. 5 (Feb. 4, 2022), ECF No. 264; *see CMA I*, 41 CIT at __,

205 F. Supp. 3d at 1344.  The issue of whether substantial evidence supported that

agency decision was not before the Court of Appeals in *CMA IV*, this Court not having

---

[1] References to public documents in the Joint Appendix (Mar. 11, 2022), ECF Nos. 266 (Public), 267 (Conf.) are cited as "P.R. __."

adjudicated Double Coin's claim contesting it.  Accordingly, the judgment of this Court

set aside by *CMA IV* was not a judgment on the merits of Double Coin's claim

contesting the Department's determination that Double Coin failed to rebut the

presumption of government control.  Judgment (Sept. 3, 2019), ECF No. 243.  The court,

therefore, proceeds to adjudicate that claim as asserted in support of Double Coin's

motion for judgment on the agency record.

The parties have submitted updated briefing on Double Coin's motion.  Opening

Br. of Pls. China Manufacturing Alliance, LLC and Double Coin Holdings, Ltd. (Dec. 6,

2021), ECF Nos. 260 (Conf.), 261 (Public) ("Double Coin's Br."); Pls.' Rule 56.2 Mot. for J.

on the Agency R. (Dec. 6, 2021), ECF Nos. 260 (Conf.), 261 (Public).  Defendant has

responded in opposition to this motion, Def.'s Resp. to Pls.' Mot. for J. on the Admin. R.

(Feb. 4, 2022), ECF No. 264, and plaintiffs have replied, Reply Br. of Pls. China

Manufacturers Alliance, LLC and Double Coin Holdings, Ltd. (Feb. 25, 2022), ECF No.

265.

### B.  The Department's Determination that Double Coin Failed to Rebut the Presumption of Government Control Is Supported by Substantial Evidence

In determining that Double Coin failed to rebut the presumption of *de facto*

control over its export functions by the Chinese government, Commerce relied

principally on Double Coin's corporate ownership structure.  Commerce found that

Double Coin's majority shareholder was the Huayi Group ("Huayi"), which held a

65.66% ownership share.  *Decision Memorandum for Preliminary Results of Antidumping*

*Duty Administrative Review: Certain Pneumatic Off-the-Road-Tires from the People's Republic of China, 2012-2013* at 10 (Int'l Trade Admin. Sept. 30, 2014), P.R. 259 ("*Prelim. Decision Mem.*"); *Final I&D Mem.* at 16 (incorporating findings from *Prelim. Decision Mem.*). Commerce also found that Huayi is 100% owned by the Shanghai State-owned Assets Supervision and Administration Commission of the State Council ("SASAC") and that SASAC "is a central governmental body that oversees important state assets." *Prelim. Decision Mem.* at 10.  The record also contains evidence that no other shareholder held more than a one percent ownership share.  *2012-2013 Administrative Review of the Antidumping Duty Order on Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Analysis of the Preliminary Results Margin Calculation for Double Coin* at 11 (Int'l Trade Admin. Sept. 30, 2014), P.R. 264 (citing *Double Coin's Section A Response* at 2–3 (Jan. 22, 2014), P.R. 48, 55).

Commerce also reached findings addressing what it considered to be the effect of the level of government ownership in Double Coin.  Commerce found that "as Huayi is the controlling shareholder, it is the entity controlling Double Coin's board and management." *Final I&D Mem*. at 15.  It also found that "Double Coin's Articles of Association demonstrate that a majority shareholder—and particularly one with a 65.66 percent ownership—has near complete control over any shareholder decisions, including decisions which may affect the management and operations of the company." *Id*. at 16.  Commerce found, in summary, that "there is undeniable evidence that the

100 percent SASAC-owned majority-owner of Double Coin exerts considerable influence over the board of directors (and, thus, the management and operations of the company), and that the factual record does not provide sufficient information to rebut the presumption of government control." *Id*. at 18.

In support of its motion for judgment on the agency record, Double Coin acknowledges that Huayi "has significant influence in the constitution of the board, and even in the selection of Double Coin's management" but argues that "such right does not automatically result in control by Huayi over the board and management." Double Coin's Br. 36.  Double Coin argues that despite the majority government ownership, it retained control over its own business activities, and, in particular, its export activities. *Id*. at 10, 39–50.  Double Coin points out that its U.S. subsidiary, China Manufacturers Alliance, set prices directly with U.S. customers.  *Id*. at 44.  Double Coin also argues that Commerce, although saying it applied a four-factor test to make its determination, departed from its established policy by regarding its decision on the third factor as the controlling factor, which was whether a respondent has autonomy from the government in making decisions regarding the selection of management.[2]  *Id*. at 13–15.

_____

[2] Concerning its four-factor test, Commerce explained:

Typically, the Department considers four factors in evaluating whether each respondent is subject to *de facto* government control of its export functions: (1) whether the export prices are set by or are subject to the approval of a government agency; (2) whether the respondent has

(continued . . .)

Double Coin's remaining claim turns on the issue of the level of discretion

Commerce may exercise in determining whether a majority-government-owned

respondent has rebutted its presumption of *de facto* government control.  The court

concludes that this discretion is considerably broad.

The Court of Appeals repeatedly has affirmed the Department's authority to

apply a rebuttable presumption of government control, even to a cooperative

mandatory respondent, and to apply to that respondent a rate selected for the

PRC-wide entity if the presumption is not rebutted.  *CMA IV*, 1 F.4th at 1039; *Diamond*

*Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304 (Fed. Cir. 2017).  Commerce has not

grounded its exercise of that authority in a specific provision of the Tariff Act or

implementing regulations.  *See Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*,

No. 23-14, 2023 WL 1867677, at *9 (Ct. Int'l Trade Feb. 9, 2023).  Thus, there is no

statutory language, legislative history, or regulatory language or preamble to guide a

court when ruling on the Department's decision to apply its methodology.  According

---

(. . . continued)

authority to negotiate and sign contracts and other agreements;
(3) whether the respondent has autonomy from the government in making
decisions regarding the selection of management; and (4) whether the
respondent retains the proceeds of its export sales and makes independent
decisions regarding disposition of profits or financing of losses.

*Decision Mem. for Preliminary Results of Antidumping Duty Administrative Review: Certain*
*Pneumatic Off-the-Road-Tires from the People's Republic of China, 2012-2013* at 8 (Int'l Trade
Admin. Sept. 30, 2014), P.R. 259 (citing two previous administrative determinations).

to that methodology as applied in the Fifth Review, the presumption of government control over export functions, as a general matter, is not rebutted if a board of directors under the control of a majority government shareholder had the authority and potential to select and oversee company management.

Untethered by statutory or regulatory standards, Commerce was free to change its interpretation and application of the four-factor test at any time, so long as it provided a reasonable explanation for a departure from past practice. *See, e.g.*, *Atchison, T. & S. F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973); *Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1373 (Fed. Cir. 2003) (citing *Atchison*, 412 U.S. at 808) ("Commerce is permitted to deviate from this past practice, at least where it explains the reason for its departure," where the "past practice" was "not a burden imposed by statute or regulation" but was merely "a general practice of Commerce."). For the Final Results, Commerce explained that it revised its practice in response to the decision of this Court in *Advanced Tech. & Materials Co. v. United States*, 36 CIT 1576, 1593, 885 F. Supp. 2d 1343, 1359 (2012), *aff'd*, 581 F. App'x 900 (Fed. Cir. 2014) (reasoning that absent proof otherwise, management of a company with majority government ownership should be presumed "to be beholden to the board that controls their pay . . . ."). *Final I&D Mem.* at 18 n.64. Although the decisions of this Court and the Court of Appeals in the *Advanced Tech. & Materials* litigation are not precedential, nothing precluded Commerce from being guided by them in revising the practice by

which it applies its *de facto* test.  For these reasons, the court is not persuaded by Double

Coin's argument that Commerce exceeded its discretion by giving controlling weight to

its third factor on the record facts of the review.

       Nor is the court persuaded by Double Coin's argument that substantial evidence

did not support a finding that Huayi actually controlled day-to-day business decisions

during the period of review, including decisions on the pricing of exports.  Under its

revised *de facto* test, Commerce need not base its decision entirely on evidence, or the

lack thereof, of direct government control of the day-to-day general business

operations, or the export-related operations in particular, of a majority-government-

owned corporation.  Instead, Commerce may consider whether there is indirect, or

potential, control of such day-to-day operations because of a government-influenced

board of directors that has the authority to appoint and oversee a company's

management.  That is what Commerce did for the Final Results.  *Final I&D Mem.* at 16

(emphasis added) (finding "near complete control over any shareholder decisions,

including decisions which *may* affect the management and operations of the

company.").

       Moreover, an agency may draw reasonable inferences from the record evidence

considered as a whole.  *SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 845 (Fed.

Cir. 2020) (quoting *Matsushita Elec. Indus. Co., Ltd. v. United States*, 750 F.2d 927, 933

(Fed. Cir. 1984) for the principle that "substantial evidence includes 'reasonable

inferences from the record'").  Under its revised test, it sufficed that Huayi, a
government entity, was the majority shareholder, that no other shareholder had more
than a one percent share, and, as Double Coin itself acknowledges, that Huayi had
significant influence in the constitution of the board and the selection of Double Coin's
management.  From these facts, Commerce reasonably inferred that an entity of the
Chinese government, among all shareholders, had outsized influence over all business
decisions of Double Coin.

     Double Coin argues that despite Huayi's significant influence in the constitution
of the board and selection of management, Huayi did not "control" the board and
management because the board must act in the best interest of Double Coin, because
minority shareholders may bring suit against board members who fail such duty, and
because of the presence of "independent" board members.  Double Coin's Br. 36.
Double Coin explains that independent board members are required to act without the
interference of the principal shareholders, or of persons in actual control or holding a
material interest in, the company.  *Id*. at 37 (citing Article 130 of Double Coin's Articles
of Association ("AoAs"), P.R. 192).  It points out that three of the seven directors were
independent directors.  *Id*. at 35 n.4.  Double Coin points to safeguards such as
Article 35 of the AoAs, which recognizes the right of a minority shareholder to bring
suit against a member of the board or senior management who acts against the interests
of the company and thereby breaches applicable law or Double Coin's AoAs.  *Id*. at 34.

Double Coin also mentions the right of holders of 10% of shares to call a shareholders'

meeting, and of shareholders of 3% of shares to raise a proposal at a shareholders'

meeting, adding that Huayi's shares would be excluded from voting in the event of a

conflict of interest on a decision under debate.  *Id*.

        Double Coin's arguments are unconvincing because they are based on a

presumption that the effect of government control is manifested only when there is

conflict or "interference" between the governmental and commercial interests of a

company.  Double Coin fails to explain why Commerce, when examining the effect of

government ownership in the context of a company's governing structure, was required

to construe the influence and effect of government control so narrowly.  Implicit in the

Department's inquiry under its revised four-factor test is that a government-controlled

business enterprise differs fundamentally from one that is free of government control

with respect to its export functions.  Because of the breadth of the Department's

discretion in implementing its test for government control of export functions, the court

has no reason to conclude that Commerce may not do so.  In its narrow focus on

"conflict" or "interference" with commercial interests, Double Coin fails to recognize

that a government-controlled company may have, for example, commercial advantages,

as well as commercial disadvantages, compared to companies that are independent of

such control.  On the evidentiary record of the Fifth Review, Commerce reasonably

could conclude that Double Coin failed to demonstrate independence from aspects of

government control over its business operations in general.  Commerce reasonably

could infer that this level of government control was inconsistent with the independent

exercise of decision-making over export functions.

### III.  CONCLUSION AND ORDER

Commerce centered its inquiry on the influence of a government-controlled

majority shareholder on the selection and supervision of management.  That inquiry is

not necessarily confined to a consideration of evidence of government control over

management's day-to-day business decisions.  In the absence of a statute or regulation

that defines or otherwise governs this inquiry, the court lacks a basis to conclude that

Commerce acted contrary to law in exercising its broad discretion in this way.

The court concludes, further, that the record evidence as a whole supported the

Department's findings, and reasonable inferences, which in the aggregate showed that

Double Coin failed to demonstrate that it was free of the influence of Huayi on its board

and, indirectly, on its management.  While Double Coin put forth certain evidence of

independence of government control, including, in particular, the ability of its U.S.

affiliate to set prices of subject merchandise, it did not show that it was free from all

material aspects of government control that emanated from the authority of the board

to select and oversee the company's management personnel.  Therefore, the court

sustains as supported by substantial record evidence the determination that Double

Coin failed to rebut the presumption of control of export functions, when viewed

according to the methodology Commerce permissibly applied in the review.

Finally, Commerce permissibly having found that Double Coin did not rebut its

presumption of government control of its export functions, and there being no other

issues to be decided in this litigation by either Commerce or the court, Commerce must

issue a new determination upon remand.  That determination must effectuate the

mandate of the Court of Appeals in *CMA IV* by assigning Double Coin the PRC-wide

rate of 105.31%, which will allow the court to enter judgment concluding this litigation.

Therefore, upon consideration of all papers and proceedings had herein, and

upon due deliberation, it is hereby

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record
(Dec. 6, 2021), ECF Nos. 260 (Conf.), 261 (Public) be, and hereby is, denied; it is further

**ORDERED** that Commerce shall issue a new determination upon remand that
assigns to Double Coin the PRC-wide rate of 105.31%; and it is further

**ORDERED** that Commerce shall issue the required redetermination within
30 days of the issuance of this Opinion and Order.

                                                    /s/ Timothy C. Stanceu
                                                      Timothy C. Stanceu, Judge

Dated: May 16, 2023
          New York, New York